May it please the Court. I'm Vincent Savarese, and I am here on behalf of F. Harvey Whittemore, the appellant defendant in this criminal case. Your Honors, in the case of United States v. O'Donnell, this Court held that Section 441F of the so-called Conduit Contribution Prohibition applies to straw-donor situations in addition to false name situations where the accused solicits support for a Federal candidate and furnishes the money for the contribution either through an advance or a prearranged reimbursement. In other words, the — in that scenario, as the Court explained in that case, the — the contributor is a mere functionary, a mere mechanism of the accused who is effectively managing to get what is his money to the candidate. This is to be distinguished, Your Honors, from mere enablement. This case involves mere enablement because this case involves a situation that wasn't before the Court in O'Donnell, and that is what Mr. Whittemore did here, and the evidence shows abundantly, we submit, was make unconditional gifts to family members, friends, and employees of the Wingfield-Nevada Group. And when you say unconditional, what do you mean? The evidence seems to me clearly to show he made these payments with the expectation that the money would be contributed, and, of course, the expectation was fulfilled. Well, we would suggest that what the evidence shows is that he certainly had the hope and the desire that the contributions be made, but he relinquished and abdicated all control over the disposition of the funds. And was the hope realized? Yes, that hope was realized. Was it realized for every person to whom he gave the money? I believe it was. So it might have been a fairly realistic hope. It may have been, Your Honor, but we respectfully suggest that the ---- It might be that the evidence suggests fairly strongly and the jury could have concluded that the recipients of this money understood the deal. And while if they decided to keep the money and go like this to Mr. Whittemore, they probably could have, in the sense of when Mr. Whittemore brings the lawsuit, they probably get to keep it, but they might be in some trouble with Mr. Whittemore afterwards. Well, Your Honor, there's no evidence to suggest that. I mean, the ---- Well, but there's a lot of evidence to suggest that he had a fair amount of control over these people, and he gave the money with the expectation that it would be passed on as a political contribution in their name, and that's exactly what happened. But there's no evidence that he controlled the disposition of the monies that he gave. And that is what has to be ---- That depends on what you mean by controlled. Well, the statute requires that in order to constitute a contribution, it must be for the purpose of the ---- of influencing the election by contribution to the candidate. And it's very hard to believe that Mr. Whittemore had anything other than that purpose. Well, Your Honor, that ---- the jury was not given the option to weigh that correctly. By considering the fact that Mr. Whittemore ---- by having an opportunity with proper instruction to consider Mr. Whittemore's donative intent, if that donative intent was absolute and unconditional, then he was susceptible to having that hope frustrated. The difference here is the difference between the purpose of the transfer from him to the contributor and the hope he may have had as to what would happen with that money, but that doesn't mean that the gift was for that purpose. Now, that's what has to be there for that ---- So tell me exactly what it is, the instruction, that the jury should have got that did not and why that would have made a difference. The jury should have gotten the instruction that an unconditional gift is characterized by irrevocable donative intent. It is characterized by an inability on the part of the donor to control or prevent a subsequent disposition of the funds. And it should have been instructed that by virtue of an unconditional gift, there is an immediate divestiture of ownership of the funds by the donor. So from that point forward, it's not his money to give. And if he had the irrevocable donative intent to turn that over to who becomes the ultimate contributor, then he is not the ultimate payor. Yes, sir. I'm focusing on the instructions that were given. Yes. I understand you have the complaint about the instruction that wasn't given. But I guess I read the instruction that was given, in particular the language of the true source of the money. I think you know the instruction I'm talking about. As basically the jury was required to reject the exact theory you just articulated in order to find the element that the jury, that the judge instructed them on. Well, I don't believe so, Your Honor. So let me just read it. Okay. Sure. I'm reading from ER 151. As to the second element, this is the key element of count two, the government must prove beyond a reasonable doubt that the individual identified as the contributor was not in fact the true source of the money. So to me, that completely encompasses your the theory you just articulated about the unconditional gift. Why am I wrong on that? Well, because the jury had no principled legal framework to make that determination. The jury was simply read the statute. It must be for the purpose of. But we know that the. I'm talking about the language I just read to you is from the jury instruction that this is one of the elements of the offense the jury had to find in order to convict. And so if they believed, right, that the money was in fact unconditionally given to the recipients, then it was their money. And they couldn't find that the true source of the money was in fact your client. We were not permitted to argue that the money was unconditionally given. We were not permitted to argue. We were forbidden from making that argument by the district court. The district court admonished counsel only to argue to the jury what is, and I quote, a common understanding of the word gift. We were prohibited from distinguishing conditional from unconditional gifts. And our instructions would have made that distinction and as would we in argument. But we couldn't do that. So the jury had no legal framework, no wherewithal with which to make a determination the difference between a gift that has a particular purpose and therefore constitutes an advancement from a gift that has no purpose, that is unconditional, that surrenders all control irrevocably to the donee, and therefore is not. Hold on. So then on the next page, on 152, the, again, this is just a continuation. The jury had to find that the money was given to the recipient for the purpose of causing that other person to make a contribution in that other person's name. Again, it's just, to me, they were told that they had to reject that theory that you just articulated in order to convict. There's too much confusion, we would suggest, between the purpose of the transfer from Whittemore to the contributor, confusion between that purpose of the transfer and Mr. Whittemore's mere desire and mere hope. One may entertain a mere hope and mere desire and hope it is fulfilled by a transaction that does not impose control. But the jury had to find that the purpose, the purpose of him giving the money to these people was so that they would funnel it on to Senator Reed. Not because, not the purpose being, well, out of the generosity of my heart, I wanted to give you this money, and then I hope that maybe you'll, in the goodness of your heart, you'll decide to do something else with it. That's not what they were instructed. We suggest that the jury could not have made that determination properly and with adequate instruction without being made aware of the fact that the criminal intent to evade, to violate Section 441F is irreconcilably inconsistent with the irrevocable donative intent of an unconditional gift. Mr. Whittemore's the instruction. Well, under, I'm sorry, but under Brian, they didn't have to prove that he knew he was specifically violating Section 441. He just had to know that what he was doing was unlawful, right? Well, yes, Your Honor, but it is a specific intent crime. And he did have to prove willfulness. The government had to prove willfulness. That is to say, a specific intent to disregard or disobey the law with bad purpose. So to the extent that donative, irrevocable donative intent is inconsistent with that criminal intent, that determination of purpose and criminal intent was not adequately informed by instruction, and that is our argument. Yeah, no, I heard the argument. Let me come back to the part of the instruction that Judge Watford read to you. The instruction says, prohibits contributions which occur when a person provides anything of value, including a gift. And what your instruction wants is a precise definition of gift. Yes, sir. But the word gift is here. I think the ordinary understanding of a gift is I give it to you, it's yours. Well, Your Honor, in order for a gift, I would respectfully submit, in order for a gift to actuate the purpose of funding a candidate by advance, as O'Donnell would require, then the gift would have, by definition, be a conditional one. It would be one or a bailment if not a conditional gift. I just disagree with you in terms of the law, then. You give someone a gift. You can do with it what you want. But I'm giving it to you with the purpose that you should give it, you should send it along to Senator Reid. But it's a gift. Now, you just want a legal definition of gift, but the common understanding of gift is essentially what you want. We want a definition of gift that comports with the evidence and the facts of this case, which was that the donees all testified, with the exception perhaps of three that intimated that they perceived some expectation on Mr. Widermoore's part that they make the gift. But other than that, the overwhelming weight of the evidence was he told me it's a gift. He told me it's completely voluntary. I could have kept it for a vacation. I could have done whatever I wanted with that money. But by some miracle, every one of them sent it along to Senator Reid. Well, Your Honor, that does not mean, however, I understand that. The timing is conspicuous indeed. But the only way for us to have had a fair opportunity to challenge or present our defense or challenge the government's theory was to be able to have the jury evaluate donative intent and unconditional gift. And they should have been allowed to consider that. It's possible, Your Honor, for a series of unconditional gifts to all result in contributions actually being made. That's not something that is necessarily that the two are mutually exclusive. It could happen that they were persuaded by Mr. Widermoore's advocacy on behalf of Senator Reid. And it could just so happen that they decided to make those contributions because they were so persuaded. And that was his First Amendment right to do, to combine that First Amendment right with merely enabling a gift, merely enabling a gift, renders the statute unconstitutional as applied under the First Amendment we would submit. There must be earmarking, direction and control. The evil that the statute is designed to prevent is the accused from continuing to assert ongoing dominion and control over the disposition of the funds. We don't have that here, not legally. He couldn't have stopped them if he wanted to. If the jury was properly instructed as to unconditional gifts, they would have seen that he abdicated and subjected himself to frustration. Well, you know, I think the crime is complete if he gives it to them with the purpose of their passing it on to Senator Reid, even if they don't do that. Well, I would agree with you, Your Honor. I would agree. It's his purpose. But the question of purpose is a legal term. It is a statutory term of the definition of a contribution. But Mr. Whittemore's mere hope and desire could easily be confused with what the statute requires to be a legal purpose of the transfer from him. To the extent that the transfer from him has no designated purpose, to the extent that we are not talking about replacing designated dollars for designated dollars, then we are not implicating Section 441F. What we have then is simply, it would be analogous to an employer paying an employee his paycheck and at the same time advocating support for a particular candidate, financial support for a particular candidate. The money belongs to the employee. The employer has furnished it. He has merely furnished it. He has merely enabled a contribution to take place. But he has not converted the contributor to a mere mechanism in a committee. That's why I think the true source of the money component of the instruction just dooms your argument, because in the paycheck hypothetical, that's right. The jury would look at this and say, no, the employee was the true source of the money. Sure, it got funneled or it was paid to them by the employer. And I'm thinking that here that the jury must have found the same thing. But they can't do so in an appropriate legal manner if they are not aware of the fact that an unconditional gift renders an immediate divestiture of the former source of the money as the contemporaneous owner at the time of the contribution. That's the same thing as a paycheck. Right. But you don't and the reason why you wouldn't need an instruction telling a jury, hey, when someone pays you a paycheck, it becomes your money, right, is the same thing with the gift. I mean, juries understand if your theory of the defense was that this was an unconditional gift and the money, therefore, became the recipient, no strings attached, then they would have acquitted under this instruction. But the average person not trained in law does not understand that not all gifts are created equal. There are some gifts and then there are others. I mean, unconditional gift is inconsistent with the purposes of O'Donnell and the statute. But the question under the statute, I think, is not whether this is an unconditional gift in contemplation of law. The question under the statute is what's the purpose of Mr. Whittemore when he makes the gift? I believe I would suggest, Your Honor, that the purpose of the statute is addressing the purpose of the transfer from Mr. Whittemore. The purpose of the transfer. He can have the ---- That's exactly my point. What was Mr. Whittemore's purpose when he gave that money to all these people? Well, I think the Court is, Your Honor, is focusing on Mr. Whittemore's desire, but not on the purpose of the transfer. What's the difference here between desire and purpose? Well, the purpose goes to the transfer, the mechanism by which the transfer is made. If that's ---- there are many ways to affect a contribution. Loan, gift, deposit of money. The statute mentions many. In the case of a gift, we suggest that the category must be subdivided. In order for the jury to intellectually grasp the fact that ---- But if the underlying question is what is his purpose? The purpose, he doesn't have a specific purpose, or the gift does not have a purpose if it is an unconditional one. Now, I don't mean to quibble over semantics, but I do ---- I do suggest that there's a difference between Mr. Whittemore's desire and the purpose of the transfer. It's the purpose of the transfer from him that triggers the statute, if at all. And the purpose of an ---- there is no particularity of purpose in the case of an unconditional gift. Now, the jury may well have been free to disregard that and say, we don't believe these gifts were unconditional, but they should not have been done ---- allowed to do so without being instructed as to what an unconditional gift is, and then compare that to the facts as they saw them to be. Your Honor, we also make the challenge to the facial validity of the continuing distinction between contributions to a political campaign committee and expenditures. You're going to have to wait around for that one. We know. We recognize that. And we are making ---- Don't worry. It might happen soon. Don't worry. The path is becoming clearer, so. This is your ---- Drag this appeal out. See if you can keep this on direct appeal for long enough. The other issue, one of the other issues, anyway, that there are two remaining issues, the issue of the expert witness. We recognize that the issue is whether the challenge was preserved. We think the testimony was relevant to show the objective reasonableness of Mr. Whittemore's belief that the ---- by completely divesting himself of this money unconditionally, that the statute did not reach that conduct. That subjective belief on his part, we believe, was amply shown by the testimony of the FBI agents who testified to his statements and the testimony of the various giftees and contributors that nature of the ---- as to the nature of his state of mind. The Court found that the purpose was essentially to try to testify to a legal conclusion. We don't think that that was true. We think that that order should be treated as a final order because the only change in circumstance was that Mr. Whittemore did not take the witness stand. So are you going to argue anything about the linguistic professor testimony? Yes, Your Honor. So how was Mr. Whittemore prejudiced by the exclusion of that evidence? Because he was deprived of the opportunity to demonstrate to the jury that his belief as reflected in the evidence was an objectively reasonable belief. There's a, we would suggest, a direct correlation between objective reasonableness and the good faith of a subjectively held belief to the extent that the greater the objective reasonableness of a subjective belief, the more likely that the subjective belief is a good faith one. So to that extent ---- Can I just ask how old Mr. Whittemore was in 2007? Was that in the evidence at all? Your Honor, I believe that Mr. Whittemore was, I think, his late 50s, about my age at that time. Okay. I see my time is up. Okay. Any more questions on the bench at this time? We've taken you over, but we will give you a chance to respond. Thank you so much, Judge. Good morning. May it please the Court. I'm Elizabeth White for the United States. I'm the Appellate Chief at the U.S. Attorney's Office. Good morning, Counsel. And just to be clear, for purposes of this argument, as opposing counsel did, I'm going to use the statutes as they were numbered during this case and through the appeal. The Court may be aware that on September 1st of this year, there was an editorial reclassification of all of the election law statutes, and those are found in Title 52 now. That's about a month and a half ago. But as counsel said, this Court in O'Donnell held that Section 441 unambiguously applies to a defendant who solicits others to donate to a candidate for federal office and then furnishes the money for that contribution, and that is exactly what happened here. The defendant promised a United States senator that he'd raise $150,000 for the senator's campaign by March 31st. On March 27th, when he hadn't raised any money yet, and the fundraiser is calling, leaving messages saying, please have him call me, he'll know what this is about, the defendant took out his checkbook, sat down and wrote $145,000 worth of checks to 17 people. Those who were single got $5,000. Those who were married got $10,000. These were all people who were financially dependent on the defendant. They were his relatives, his children, people who worked at the company that he ran, everyone from his secretary to the CFO of the firm to the maintenance man at the golf course. Every single one of these people turned around, mostly, most of them on the very same day, a couple of them the next day, and made maximum contributions to the senator's re-election campaign. The people who got $5,000 wrote checks for $4,600, pocketed the $400 difference. Those who were married, only those who were married or engaged, got checks for $10,000, and those people, both they and their spouse or partner, wrote $4,600 checks for a total of $9,200, pocketing the $800 difference. Now, I think what we've heard here today and the briefing in the district court, the pretrial briefing, you know, what we have here is blatant, straightforward conduit campaign contributions. This is really straightforward. And so the defendant tried to insert some ambiguity here with this idea of unconditional gift as an issue of Nevada State property law. And I think what we see, and we see again here at argument, is that what the defendant is doing is conflating two definitions of the word unconditional. Right? There is, in Nevada property law, this idea of an unconditional gift inter vivos in which legal ownership of the money is irrevocably transferred from the donor to the giftee. And that is, as I think Judge Fletcher said, I mean, I think that's probably what most of us think of when we think of a gift, right? But that unconditional meaning an absolute transfer of legal ownership. Right? There's another definition of unconditional that most of us would use in common sense normal conversation, which means no strings attached. Right? You give someone an unconditional gift, and there are no strings attached. And what the defendant says, and they actually say this in their reply brief, and I think he repeated it here, that a particular purpose is irreconcilably inconsistent with the concept of an unconditional gift. Now, that conflates these two meanings, and it just, it defies common sense and human experience. You can give someone a gift for a particular purpose, and unless you write a contract such that you still control the money, once you give the gift, it's theirs, and they can do what you wanted them to do with it or not. It's theirs. But the fact that you don't have legal control over it anymore doesn't negate the fact that you gave it with a particular purpose. You know, it's been my experience that hardly any gifts are unconditional in this human sense. Virtually all gifts are given with some purpose other than pure anonymous pleasure. I mean, there are some anonymous gifts, but there are not very many of them. And the reverse is also true, that very few gifts are given legally, conditionally. I mean, under the legal definition of this Nevada State property law definition of the inter vivos gift, where I give you this, I mean, if I give my adult child money because I know that she needs a car, and so I say, here, I know you need a car, let me give you this money, right? I'm not going to write out a contract that says, and you have to use it to get a car, or else you have to give it back to me. And what you really want is you want her to come home for Christmas. Well, there's that, too. That's why you're giving her the gift. So now we have another purpose. But if she, whether she uses that money to buy a car or not, doesn't negate the fact that that was the purpose. Now, in this case, the jury was properly instructed that in order to find the defendant guilty, they had to find that he, when he sat down and wrote out these $145,000 worth of checks on March 27th, four days before the deadline, and he gave them to these people, he gave them with the purpose of funding their contributions, of routing that money to the Senator's reelection campaign, and that is exactly what happened. Am I right in reading the statute as creating a complete crime once the money is given for that purpose, even if the money is not passed on to Senator Reid's campaign? I think so. And that actually, you know, the court talked about it. I don't know of a case, because I've not seen one that's been prosecuted, where the person who got the gift said, thanks very much and went to Mexico. And, I mean, as we presented at trial, I mean, we don't think that there was any coincidence that he chose people who were financially dependent on him. I mean, yes, the maintenance guy at the golf course, who was the husband of his niece, made $27,000 a year, and he calls them in and gives them a check for $10,000, woo-hoo, and then says, you know, and I'd like you to donate 92 percent of this to, in 2007, to Harry Reid's 2010 reelection campaign, and they do. Now, legally, could they have said no? Sure. I mean, if this was under Nevada law, an unconditional intervegal's gift, they could do with what they want. But this federal statute is not dependent on the vagaries of 50 different state laws. The question here is whether he gave this money for the purpose of funding that contribution, and, in fact, that's what happened. But the reason no one would be prosecuted if the recipient of the gift took off to Mexico instead is because what you prosecute with is the records, which are required to be kept to maintain the specific identification information of who the donor is, have to be filed by the person who's running for the office. So it's not out of the charity of the prosecutor's heart that you don't prosecute those cases. You just don't have the record with which to prosecute. And this question actually came up in O'Donnell as well. O'Donnell was primarily about reimbursements, and the question was, was the crime committed when the conduit made the donation to the John Edwards campaign, knowing that the defendant had promised to reimburse, or was the crime not complete until the defendant reimbursed? And what the court in O'Donnell said is, interesting question. We don't really need to decide that. Probably, you know, probably the question is making in the name of another. And in O'Donnell, they were saying that the defendant was saying if the reimbursement doesn't come for many, many months later, or, you know, depending on the amount of time, there could be, you know, this could raise some real questions about when did the crime actually occur. And, you know, those are interesting questions. I read the statute as saying that the crime was complete as soon as he made the, as soon as he transferred those checks with that purpose, that they would provide most of that funds back to the senator's campaign. But, again, in this particular case, of course, almost all of this conduct happened within a few hours, or at most within a day. I mean, you know, these checks were all written on the 27th. They were all the checks from the people to the senator's campaign were all dated the 27th or 28th, with one exception. They were transferred to the senator's campaign by FedEx on the 28th. So that's an interesting question, which is, for another case, I would say I think Your Honor is right, but certainly we don't have to reach that far. But that's one of the reasons that Judge Wardlaw suggested. I think we're never going to see the case. Exactly. And then, you know, and the other thing is, it's like, so, yes, as I put a footnote, and I hope it wasn't, I didn't mean to be snarky with this footnote in our brief, about, so if one of these people had said, if there was a conditional gift, right, I mean, under the defendant's conception of it, this could, it could only be a conduit contribution if it was a conditional gift, where the person gives the money and says, you must, I'm not giving up control, you must turn around and give this to the senator's in college, and this is a lot of money, and I have other things I want to use it for. You know, how would a defendant who gives a conditional gift, and presumably still has legal authority over that money, how would they enforce that legal right? Because they can't go into court and say, Your Honor, my secretary was supposed to make an illegal conduit campaign contribution with this money, and she didn't do it. So, I mean, you know, when there's no remedy, I mean, I'm not really sure how there could be a right to this when there's no legal remedy available. The defendant at trial, you know, there was, most of these people testified, and there was actually quite a bit of testimony, direct testimony from people saying, Maggie and Brandon Kingsbury came in and they said that the defendant asked us to make contributions, and we said we didn't have money to do that, and he said, That's okay, I'll give you the money. And he said, I'll give you $10,000, and I need you to write these checks. And Maggie Kingsbury said, But that doesn't add up to $10,000. And he said, Yeah, the rest is just a little bonus for you or a little gift for you. I don't know. He kind of used the word bonus and gift interchangeably. But what was happening was absolutely clear. This defendant made $145,000 of checks to people for the purpose of turning around and making and transferring that money to the Reed campaign. And in order to convict him, the jury had to find not only that the defendant made those, wrote those checks with the purpose of funding donations to the Reed campaign, but that he knew that it was unlawful to do so. And so this wasn't just a mistake. I mean, the jury was instructed, was given the willfully instruction, the willfulness instruction from Bryan, and needed to, you know, the government needed to prove that he knew, that he acted with some knowledge that his conduct was unlawful and with the purpose of doing something that the law forbids. You know, this may be in the record, and I just have not seen it. How did this come to light? This actually, it came up. There is some discussion about this at sentencing, because Judge Hicks at sentencing was commenting there were a lot of supporters of the defendant at the sentencing hearing, and Judge Hicks explained quite a bit. And one of the things he said was that he had been hearing people saying the government is beating up on, you know, on this pillar of the community who really had done a lot of good for the city of Reno and northern Nevada, there's no question. And so he said, so to the extent that any of you are sitting there thinking, why is the government targeting this man, the way Judge Hicks described it, I believe, was that this case was handed to the government on a silver platter. The defendant was in a business dispute with some former business partners, and they cleaned out his office, and they, in cleaning out his office and transferring it, they came across the file with all of the, you know, all of the evidence of these conduit campaign contributions, and they brought them to the, either to the FBI or to the U.S. Attorney's Office. So, I mean, he had files with the checks and the letters and everything right there. And then we interviewed. Then there was a grand jury with the witnesses. I don't know if you want me to discuss any of the other things, the constitutional challenges for the time being foreclosed by Buckley. Counsel, what was the sentence that Pierce O'Donnell received? I think that he. Did he ultimately plead to something? I think he ultimately pled, and I think he may have gotten a probationary sentence, but I'm not sure about that, Your Honor. I'm just wondering. I don't know whether there was an appeal of the sentence here, but the 41 to 51 months guideline range seems awfully high. I know the judge departed downward and went to 24 months, but still 24 months imprisonment. Yeah. This kind of thing is kind of remarkable. I think that first of all, you know, I don't know how much money was involved in the O'Donnell. I'm not sure how much the funds were. It's a substantial amount of money. Yeah. It's a substantial amount of money. You know, obviously when someone acknowledges their guilt and accepts responsibility through a plea, they tend to get a lower sentence. I think O'Donnell resulted in a plea. You know, in this case it was a lot of money. And right up until the sentencing hearing he was saying, you know, apparently, you know, I thought this was legal and apparently the jury disagreed, but, you know, the jury thinks I was mistaken. And, you know, and the prosecutor said, no, this jury did not find that you were mistaken about the law. This jury found that you intentionally knew what the law was and you intentionally did what the law forbids because you wanted to keep your promise to the senator, and that was more important than complying with the law. So the court, yes, the guideline range was 41 to 51, and the judge departed downward to 24 months, and there was no challenge of the sentence on appeal. Unless the court has questions about any of these other things. Just real quickly, the Friedland, the linguist's testimony, you know, the court, this was a pretrial motion in Limine, which the court denied without prejudice, specifically stating in his order that the helpfulness of this proposed expert's testimony is best evaluated in the course of trial. The defendant in his reply to the government's response to the motion in Limine had suggested that he might testify about what his actual subjective understanding of this statute was. And the judge said, you know, and if that is something, for example, if he testifies, then this expert's testimony might become relevant or important. What the government argued in our brief is that this testimony was irrelevant because there was simply no evidence at trial about what the defendant's subjective understanding of the statute is. So if there had been evidence of how he subjectively understood that statute, then perhaps the question of whether that interpretation was a reasonable interpretation might become relevant. We said that there was none. Now, here at oral argument, the defendant's defense counsel was saying that the FBI agent's testimony was at least something that the jury could infer, the defendant's subjective interpretation of that statute. If that is so, and I question whether that's so, but if that is so, then that would have been the time to offer the expert's testimony again by the defendants at trial, which they are obligated to do since the judge had denied it without prejudice. So since it was denied without prejudice and wasn't renewed at trial, this Court – it's not a final appealable order that this Court really can't consider. Unless the Court has any other questions. Thank you. Mr. Cerveris, why don't we give you two minutes on the clock. Thank you, sir. The government argues that O'Donnell contemplates a situation in which the – in which the accused furnishes the money. It does not simply provide for furnishing of the money. It's by furnishing the money by advancement or prearranged reimbursement. And to us, that means for a particular purpose. That's a conditional gift. An unconditional gift makes it the condonee's money immediately. It's no longer Mr. Whittemore's money. We are no longer dealing with a situation in which the evil of the statute is implicated, which is that of having the accused insinuate himself into the ultimate disposition of the money. So – Let me understand how you're reading the statute. You're reading the statute so that if, for example, I were to give money that I cannot myself contribute because I'm up to my limit, I give you money and I say as part of the instrument of gift, this is an unconditional gift to do with as you like. That's what the instrument says. But you and I both know that I'd like you to contribute to Senator Reid and you do so. You say there's no crime. Correct. Yes. I do. I say that that discretion has been conferred upon the donee and that I am no longer insinuating myself. I read the statute differently. I appreciate that you may, Your Honor. But we just wish the Court to give us due consideration as to our theory. The idea that these people were in a position of financial dependence upon Mr. Whittemore does not mean that they – that he continued to exercise ongoing dominion and control over these funds because of that. You know, it's a far cry from the sort of thing that the statute is designed to prevent, which is one person managing to evade the limits and with his own money. With respect to the adequacy of the theory of defense, it must be applied to the facts of the case. That was pointed out earlier in another argument this morning. You're up to your two minutes, so if you'd like to sum up. Okay. I will. The last thing I want to say is that the Court's interpretation as to whether or not an actual contribution needs to be made. To the extent that I appeared perhaps earlier to have conceded that point, I do not. On reconsideration, it occurred to me. The reimbursement situation must actually be followed through on. So the – and that's clear from O'Donnell. So the contribution necessarily has to have been made by the actual – the named contributor in order for there to be a reimbursement. It's got to be a prearranged reimbursement that is followed through upon. So, therefore, there has to be the contribution. Okay. Thank you. Thank you both sides for your arguments. United States v. Whittemore is now submitted for decision.
judges: Wardlaw, Fletcher, Watford